(C. D. 454)

INTERNATIONAL HAT CO. ET AL. v. UNITED STATES

United States Customs Court, Second Division

(Decided March 20, 1941)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiffs.

*Charles D. Lawrence,* Acting Assistant Attorney General (*James F. Donnelly,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

TILSON, Judge: The three suits against the United States listed above were filed at the port of St. Louis seeking to recover certain sums of money alleged to have been illegally exacted as customs duties on imported hats. Duty was levied on said hats at the rate of 25 per centum ad valorem plus 25 cents per dozen under paragraph 1504 (b) (2) of the act of 1930, as hats in chief value of paper or chip, not blocked or trimmed, but bleached, dyed, colored, or stained. The plaintiffs claim said hats to be properly dutiable at only 12½ per centum ad valorem under paragraph 1504 (b) (5) of said act and T. D. 48075, as hats known as harvest hats, valued at less than $3 per dozen. At the trial counsel for the respective parties agreed that these hats are valued at less than $3 per dozen and that they are made either of paper or chip. Samples of the hats were also admitted in evidence and are now before us and have had our careful examination and inspection.

165

The plaintiffs offered the testimony of four witnesses, Frank Pellegrino, vice president of the International Hat Co., William T. Christmas, president of the Caradine Hat Co., Harry Edson, vice president of the Mexican American Hat Co., and Max A. Witmann, manager of a branch of Henry Pollak, Inc., all with from 15 to 40 years' experience in the hat business. In the main their testimony that the imported merchandise is known as harvest hats was not materially different. As representative of the testimony of these four witnesses, we quote the following from witness Witmann:

Q. The article, Illustrative Exhibit A, have you dealt extensively at wholesale during the past twelve years in articles or hats such as that?—A. Yes.

Q. How extensively?—A. Many thousands of times annually.

Q. Does that article * * * fall within or without the category of articles which you know and term in your business "harvest hats"?—A. It falls within the category of harvest hats.

Q. I now hand you the article, Exhibit 1 in the present case. Have you dealt extensively and at wholesale during the past 12 years or more in unblocked and untrimmed hats like that?—A. Yes.

Q. About how extensively in that variety?—A. Many thousands of dozens annually.

Q. Was that true prior to June, 1930, as well as today?—A. Yes.

Q. Does that hat, Exhibit 1, fall within or without the category of articles which you know and recognize in your business as harvest hats?—A. It falls within the category of harvest hats. It is a harvest hat. That is the body before blocking.

Q. And how long has that been true?—A. As long as I can recall; over a period of about 40 years.

X Q. And do you sell articles like Illustrative Exhibit A as harvest hats, or as bodies, or hoods?—A. As harvest hats. They can be called bodies because the terms are synonymous in the hat trade.

X Q. In the manufacturing end of the hat trade, or in the selling end of the hat trade?—A. In both.

X Q. In its present condition it is not sold by you as a harvest hat, Exhibit 1?—A. Yes.

X Q. Before any manufacturing processes have been applied?—A. Yes.

The defendant offered no testimony.

Counsel for the defendant in his brief filed herein contends that only the woven-body type hat can be a harvest hat, and that since the hats herein are not so constructed they cannot be considered harvest hats. This contention is based on the Summary of Tariff Information, 1929, prepared by the Tariff Commission for use of the Committee on Ways and Means of the House of Representatives in passing the Tariff Act of 1930 and with particular reference to said paragraph 1504, "the Tariff Commission states that *straw hats* are divided into two general classes: (1) sewed braid hats; (2) woven hats." The following is then quoted from said summary:

Harvest hats which are worn in rural districts, at the beaches, and on golf courses, are of the woven-body type.

Harvest hats.—Harvest hats are of the woven-body type, and are imported in both trimmed and untrimmed condition. They come principally from Java, Madeira, Mexico, and China.

It may well be that when the Tariff Commission was dividing *straw hats* into two general classes it found such *straw hats* as were harvest hats to be of the woven-body type, and it may well be also that the Congress gave consideration to such classification in providing for *straw hats* in said paragraph 1504. However, the answer to this argument is that we are not here concerned with the classification of *straw hats*. Counsel for the respective parties agreed at the trial of this case that the hats herein were made of chip or paper.

Counsel for the defendant in his brief filed herein also insists that certain rulings of the court at the trial of this case remove the same from the category of *Mexican-American Hat Co.* v. *United States*, Abstract 41630, 2 Cust. Ct. 757, and Abstract 41666, 2 Cust. Ct. 765. This is based on the fact that in the two former cases there was some attempt to prove commercial designation, which the court held had not been established, while in the instant case the court refused to admit testimony tending to establish commercial designation. In the former cases we simply held that the testimony offered in an effort to establish commercial designation was not sufficient, but that such testimony was nevertheless available to aid the court in arriving at the common meaning of the term harvest hats.

No attempt was made to have the records in the two former cases admitted in evidence herein. Nor do we find it necessary, in view of the record herein, to rely on our two former decisions or any part of the record in either of said cases. The only burden the plaintiffs had to meet in this case was that of establishing by competent evidence that the hats in question are known as "harvest hats." That burden the plaintiffs have amply sustained by the testimony of four well-qualified witnesses.

On the record before us and for the reasons stated we hold all the merchandise upon which duty was levied at 25 per centum ad valorem plus 25 cents per dozen under paragraph 1504 (b) (2) of the act of 1930 to be properly dutiable at only 12½ per centum ad valorem under paragraph 1504 (b) (5) and T. D. 48075, as hats provided for in said paragraph 1504 known as "harvest hats" as claimed by the plaintiffs.

To the extent indicated the specified claim in said suits is sustained; in all other respects and as to all other merchandise all the claims are over ruled. Judgment will be rendered accordingly.